# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| Dr. Tinsley Ariana Taylor Makayla Saramosing, | |
| Plaintiff/Petitioner - Appellant, | Case No. 23-6043 |
| v. | Appellant/Petitioner's Opening Brief |
| Kevin Corbett, et. al. | |
| Defendant/Respondent - Appellee. | |

## APPELLANT/PETITIONER'S OPENING BRIEF

1. **Statement of the Case.**

   1. Plaintiff petitioned the District Court via Judge Patrick Wyrick for permanent and injunctive relief, claiming unfair discrimination against her and the transgender/gender non-conforming community and genocide. This is because the State of Oklahoma required the forcible sterilization/genocide of her prior to changing her birth certificate to reflect her true gender, both for her birth certificate and driver's license. Even thereafter, the State of Oklahoma has left deleterious notations of her gender marker and name changes all over her birth certificate as though her very existence itself is mala in se, making transgender and gender non-conforming persons, namely Plaintiff, second-class citizens. Plaintiff listed a plethora of valid laws, Constitutional provisions, evidence, and case law to support her claims.

2. In their written responses, Defendants repeatedly misgendered & deadnamed Plaintiff, and they also used anti-transgender slurs. Perhaps not surprisingly, Judge Patrick Wyrick at no time rebuked Defendants' actions even when Plaintiff directly protested, thus displaying prejudicial bias.

3. Judge Patrick Wyrick, a young, new judge to the Western District Court who has exceedingly little experience with other cultures and none with the LGBTQIA+ community, took over 15 months just to merely rule on Defendants' Motion to Dismiss in Defendants' favor. Left to his own devices, he will likely take even longer to decide the core issues of this case. "Justice delayed is justice denied", and his future ruling on this matter if merely **REVERSED & REMANDED** by this Court will likely yet again trigger a return to the 10th Circuit Court of Appeals, short of a direct ruling in favor of Plaintiff.

## 2.  Statement of Facts Relevant to the Issues Presented for Review.

1. Judge Wyrick's big reason for categorically denying Plaintiff's pro se case rested solely on the issue of her standing to bring the suit. Wyrick essentially states that Dr. Makayla Saramosing has not, is not currently, and will not in the future suffer any direct harm/injury of fact from Defendants' malicious actions and that Judge Wyrick would be "unable" to grant any relief Plaintiff is seeking. Judge Wyrick further patronizes Plaintiff by "urging her to lobby her legislature for change" if she wants something done.

2. It is worth noting that both Defendants and Judge Patrick Wyrick, the judge in the case before you now, are people who claim to be cisgender and heterosexual. Nonetheless, they have no issue with talking over someone who is lesbian and transgender, acting as if they "know better" and "have more experience" than someone like Dr. Makayla Saramosing who holds numerous degrees and/or studies and/or training in civil rights, education administration, human trafficking, social work, history, divinity, etc., and who ___is transgender and lesbian___.

Needless to say, it would be just as inappropriate if Plaintiff herself, who is about as White as they come, talked over someone who was Black as if she truly "knew" their struggles or discrimination they face as Black persons. And though Dr. Saramosing suffers from other disabilities such as autism and ADHD, it still is not the same experience as someone who lost several limbs while serving her/his/their country or a person with Down Syndrome. It would be very poor judgment on Plaintiff's part, if she were to tell them how they felt, whether they were or were not experiencing discrimination.

Likewise, it would come across as extremely callous and irresponsible if Dr. Makayla Saramosing were in a position of trust and authority, as Patrick Wyrick was in the case before you, only to tell Black persons or individual with significant war wounds who sought her assistance that they are not really hurting and did not like their "perceived" discrimination from others that they could simply go "speak with the legislature" about it and to "stop bothering her" as Wyrick did to Plaintiff.

3.    **Statement of Issues.**

a.    **First Issue:** *Addressing Past Harm to Plaintiff*

**Argument and Authorities:**

1. Judge Patrick Wyrick claimed that it is impossible to redress past harms through judicial relief. If this were so, there would be no criminal court proceedings nor wrongful death lawsuits in murder and sexual assault cases. Additionally, Plaintiff later elucidated in her court filings by clarifying that she was ***not*** seeking monetary relief except for court costs, service fees, printing, etc., as allowed by law for legal fees, court filing, printing, etc., and that any mention otherwise of such in Plaintiff's original Petition had been accidental and hoc indictum volo.

2. One such instance of past harm directly related to her legal documents that Plaintiff suffered at the hands of Gold Gym was in 2017. Far from being "possible" or "hypothetical", the managers of Gold's Gym in Oklahoma City forced her into their office to have a **humiliating and degrading** talk about genitals and gender, finally agreeing to give her 2 months' of free membership for what they did to her. This came after several other patrons there complained of Plaintiff's mere existence; she had always paid her gym fees and had not done anything wrong whatsoever. ☹

   Then sadly, the next week management at Gold's Gym did a 180 and the district manager mandated that she must use a single-stall bathroom only and not use any locker room whatsoever. Sadly, this would have deprived her of any shower use, lockers to store her items while she used the facility, access to the pool, sauna, steam room, and hot tub, hair dryers, and would have sent the message that Plaintiff was unequal to everyone else at gym and somehow "bad" for existing. Because Plaintiff stated that this mandate was illegal and that she would not comply, management there kicked her out of the facility.

3. Plaintiff experienced the same tragic malfeasance at 10 Gym in Oklahoma City in 2017 as she experienced at Gold's Gym with management there. Once again, this was because of her birth certificate and driver's license and was

incredibly humiliating, damaging, and genocidal at the hands of redneck bigots.

4. This Court granting Plaintiff relief would not harm Defendants in any manner whatsoever, while it would provide significant relief for Plaintiff's anxiety caused by Defendants' previous harmful actions and the subsequent concomitant PTSD harm, among others, she has thus sustained. The fact that Plaintiff is suffering enough to pursue this case at great expense of her time, financial resources, etc., when she could well be working or spending what little time is left in her life with her family. That, indeed, is proof of the injury in fact Defendants and now Judge Wyrick have caused Plaintiff by their complete indifference to her suffering from their . . . BULLYING. Yes, they are malignant bullies and nothing more.

b.    **Second Issue:** *Addressing Present Harm to Plaintiff*

   **Argument and Authorities:**

1. Plaintiff did present bona fide evidence to Judge Wyrick ad nauseum via multiple exhibits that demonstrated not only past harm, but present and future harm. Wyrick obviously chose not to read any of it, nor did he allow Plaintiff any oral arguments in which she stated she would present expert witnesses who would testify about the significant harms caused by Defendants to Plaintiff. Judge Wyrick erred in not only failing to review and appreciate everything she presented that took hundreds of hours of time and substantial financial resources for her to complete, but also failed to even so much as to allow for a hearing for presentation of oral arguments on both the Motions and the Petition itself.

2. While Plaintiff waited over 15 long months for Judge Patrick Wyrick to write a 10-page ruling on Defendants' Motion to Dismiss, Plaintiff and her family endured several traumatic events related to her gender marker, misgendering, deadnaming, and more at the hands of medical providers and others in her

community that were directly correlated to her birth certificate and driver's license. ☹

3. One such instance of this occurred when one of Plaintiff's LGBTQIA+ children was in a medical hospital in Lawton in April, 2022, and the staff there listed Plaintiff as her child's father instead of mother, based off of her identity documents and even physically assaulted Plaintiff. This was despite Plaintiff's physical appearance, stated gender, etc., and it was terribly traumatizing for Plaintiff that she had to file suit to have her daughter moved to a different location.

4. Plaintiff and her wife were also out celebrating Valentine's Day on February 14, 2023 at Round 1 at Quail Springs Mall in Oklahoma City, OK for their special date night, when Plaintiff was accosted by two of three other female teens in the women's restroom. They were very rude and hateful and ridiculed Plaintiff for using the restroom. ☹

   Non-law enforcement mall security eventually came over and questioned Plaintiff about the information contained on her driver's license and birth certificate. The "potty police" security guard told Plaintiff to be sure to bring her birth certificate and driver's license with her to the mall in the future. The entire event was extremely traumatic for Plaintiff and her wifey on Valentine's Day, and the event was neither hypothetical nor theoretical. ☹ The bathroom bully girls went unpunished.

5. Because Plaintiff was assigned male at birth against her will when she was a mere ***baby*** and thus unable to consent to it, even after her vaginoplasty on March 27, 2017, where she now has a vagina, Plaintiff still has a prostate. When Plaintiff sought a preventive prostate examination in Oklahoma City, she used all female pronouns and her new legal female name on her paperwork, yet the staff there repeatedly deadnamed her and misgendered Plaintiff in her medical paperwork and refused to make all the corrections to it due to her birth certificate. Thus, Plaintiff's unchanged birth certificate thwarted her peace and happiness yet again.

6. While this whole lawsuit has been going on, Plaintiff did apply to a private university to pursue further studies, but when asked to provide her legal documentations was not allowed to enroll because her birth certificate showed her old name and gender marker on it as cruel notations.

7. Plaintiff **_did_** get married to her wife, Vivien Keefe, overseas in the Philippines while this whole lawsuit was going on, and during the process her birth certificate outed her to both her attorney as being transgender and to the United States Citizenship and Immigration Services (U.S.C.I.S.). Plaintiff's attorney also expressed reservations about how some of the immigration officers there are very biased toward lesbian couples and persons who were transgender, and he noted we might get a bad officer and Plaintiff's wife might have gotten denied her permanent residence card (PRC). Plaintiff had planned to call their immigration attorney as one of many witnesses during an oral hearing who would have testified as to what happened.

   Absent Plaintiff's birth certificate, U.S.C.I.S. would never have known Plaintiff was transgender, and a big piece of the stress and discomfort placed upon Plaintiff could have been avoided if Defendants had not acted with such callous indifference and if Wyrick had taken it upon himself to rule in Plaintiff's favor or even to grant her Motion for a Temporary Injunction and not take 15 months just to dismiss the case.

8. Plaintiff also recently renewed her driver's license at a tag agency, and she added her last name of Saramosing and her middle name, Makayla, to it. Because Dr. Makayla Saramosing could not find her old license or passport, she had to present her birth certificate to them. Her birth certificate confused them very much, because it showed Plaintiff's former name and the gender a doctor assigned her at birth against her will. Her birth certificate delayed the issuance of her driver's license, and the tag agency almost refused to issue it because the personnel did not understand the discrepancies of the names and gender marker notations. ☹ Once again, this was not hypothetical or theoretical harm, but instead is further evidence of additional injury in fact brought about by Defendants and Judge Wyrick that is likely to occur many more times throughout Plaintiff's life.

9. Since coming out as transgender and due in large part to issues with her insurance, birth certificate, driver's license, etc., Plaintiff has had to undergo extensive therapy for trauma she has sustained therefrom. This has included weekly therapy visits to a counselor, medication and treatment from a psychiatrist, and more. These visits would become less frequent and would eventually cease, as will the strong medicines Plaintiff is on, when the distress from her gender dysphoria related to her birth certificate, driver's license, and the concomitant stress dissipates with a favorable resolution to her case.

10. Judge Wyrick also failed to review perhaps any of the evidence Plaintiff submitted, one of which included a letter from Gail Cohen, Plaintiff's speech pathologist, because she is transgender. Dr. Cohen would have also provided oral testimony on Plaintiff's behalf which would have also provided further evidence as to Plaintiff's standing, the harm she has, currently is, and will continue to suffer because of Defendants' and now Judge Wyrick's actions, etc. However, Judge Wyrick, as noted before, did not even offer Plaintiff an oral hearing. Instead, he just summarily shut Plaintiff down and certainly did not construe Plaintiff's petition, motions, and accompanying evidence in the broadest sense possible.

11. Judge Wyrick also erred when he repeatedly refused to permit Plaintiff, who filed this matter **_pro se_**, to enter video evidence electronically which would have supported her claimed detailed herein to why she has standing, which if she had had an attorney would not have even be an issue. Once again, it is worth noting that Judge Wyrick did not even allow Plaintiff an oral hearing, prior to granting Defendants' Motion to Dismiss. ☹

12. Some of the evidence that Plaintiff had planned to present was from expert witness testimony during oral arguments, as noted in her original Petition. This evidence never got to make it in front of Judge Wyrick, because he summarily shut down pro se Plaintiff at the starting gate.

13. Some of the evidence which Plaintiff accrued toward her case happened during the case itself, which she had planned to present during oral arguments. Sadly, Judge Wyrick never allowed Plaintiff to get that far.

c.     **Third Issue:** *Addressing Future Harm to Plaintiff*

       **Argument and Authorities:**

*1. Gra*nting Defendants' Motion to Dismiss, Judge Patrick Wyrick erred egregiously mala fide by granting Defendants' Motion to Dismiss solely on a "lack of standing" by Plaintiff. Judge Wyrick claimed that Plaintiff had not shown how failure to rule on behalf of Plaintiff would prevent future harm. Judge Wyrick noted that Plaintiff's risk of harm was not "sufficiently imminent and substantial." Really.

*2.* Apparently neither Judge Wyrick nor Defendants have been watching the national situation and especially not even Oklahoma's own legislature, as they pertain to civil rights of persons who are transgender. Oklahoma alone has introduced **over 40 anti-transgender, _genocidal_ bills in 2023 alone**. Some of the most notable of these domestic terrorist items include, but are not limited to, the following:

1. **Oklahoma Senate Bill 408 – Women's Bill of Rights (to Commit Genocide) Act –** This law has already passed the Oklahoma Senate and will pass through the Oklahoma House of Representatives shortly. Once passed, it will require the use of restrooms, locker rooms, prisons, and more based upon babies' sex assigned at birth against their will. It will also permit medical providers and state agencies, among others, to list people by their sex assigned at birth against their will. Thus, this will create even **_more_** of a genocidal second-class citizenship, just like the Nazis did with the Jews, Catholics, LGBTQIA+ and more. Sadly, this bill is just the beginning. ☹

   This terrible bill is a mere precursor of more bad things, to come, as the bill itself mentions "future legislation" that will undoubtedly discriminate even more and that this bill is a mere precursor to them. Surely this Court is not dense and can see the correlation between what the Oklahoma legislature is doing and what the Nazis and KKK did to oppress minorities.

Surely this Court can foresee what would happen to Plaintiff, who after 9 surgeries and a whole lot more looks like this, if the State of Oklahoma forces her to use the men's restroom or locker room, play on a men's sports team, or even worse go to a men's prison?



A-12  Appellant/Pe                                                    11

Ever hear of rape and sexual assault? Plaintiff has already suffered multiple sexual assaults and reported it to police and even to Judge Wyrick as part of the evidence, but alas, it fell upon deaf ears. With the impending passage of this bill and a birth certificate that outs Plaintiff as transgender, **she will soon be forced to use the men's facilities in 2023**. This threat is not "hypothetical" as Defendants and Judge Wyrick falsely claimed; it is very, **very** real. ☹

2. **Oklahoma House Bill 1449 –** A Second "Women's Bill of 'Rights'" – This is essentially the same kind of bill as SB 408.

3. **Oklahoma House Bill 2177 –** This bill not only takes away all **lifesaving** gender affirming care to minors, but it **prevents** insurance companies from covering transgender care even for adults! Given that Plaintiff's birth certificate shows her old name and gender marker on it, every provider will undoubtedly know she is transgender. Plaintiff has a vagina, so she cannot physically stop taking her progesterone and estrogen every day. If she does, she will _**DIE**_.

   Judge Wyrick and Defendants are obviously grossly inept and lack cultural training and empathy, because the price of hormones absent adequate medical coverage will cost Plaintiff thousands of dollars a year let alone tens of thousands in lifesaving surgical costs. Is this not an imminent threat of harm? Really? **Anyone who would negligently claim it is not simply does not know anyone who is transgender and thus lacks empathy, compassion, understanding, wisdom, intelligence, and often an education.**

4. The other atrocious bills going through the Oklahoma legislature are listed below as follow:

| | | | |
|---|---|---|---|
| Oklahoma | HB 1449 | Other Anti-LGBTQ Bills | **Advancing** Passed House; Senate second read, 03/30/2023 |
| Oklahoma | SB 943 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 933 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 1017 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | HB 1781 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | HB 1780 | Schools & Education | **Advancing** Re-referred to rules committee, 02/16/2023 |
| Oklahoma | HB 2736 | Free Speech & Expression | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 932 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 973 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB | Schools & Education | **Advancing** Passed Senate; House second |

| | | | |
|---|---|---|---|
| | 26 | | read, 03/29/2023 |
| Oklahoma | SB 131 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 1004 | Other Anti-LGBTQ Bills | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 30 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 887 | Other Anti-LGBTQ Bills | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 935 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 937 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | HB 2177 | Healthcare | **Advancing** Passed House; Senate second read and referred to committee, 03/23/2023 |
| Oklahoma | SB 878 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | HB 1466 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |

| Oklahoma | SB 789 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 788 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 129 | Healthcare | **Advancing** Passed committee as amended, 03/01/2023 |
| Oklahoma | SB 787 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 786 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | HB 1011 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | HB 2186 | Civil Rights | **Advancing** Committee passed as amended, 02/23/2023 |
| Oklahoma | SB 1007 | Schools & Education | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB 250 | Healthcare | **Advancing** Second read and referred to committee, 02/07/2023 |
| Oklahoma | SB | Healthcare | **Advancing** Second read and referred to |

000015

| | | | |
|---|---|---|---|
| | <u>345</u> | | committee, 02/07/2023 |
| Oklahoma | <u>SB 252</u> | Healthcare | **Advancing** <br> Second read and referred to committee, 02/07/2023 |
| Oklahoma | <u>SB 408</u> | Other Anti-LGBTQ Bills | **Advancing** <br> Passed Senate; House second read and referred to committee, 03/29/2023 |
| Oklahoma | <u>HB 1377</u> | Healthcare | **Advancing** <br> Second read and referred to committee, 02/07/2023 |
| Oklahoma | <u>SB 613</u> | Healthcare | **Advancing** <br> Passed Senate; House second read and referred to committee, 03/29/2023 |
| Oklahoma | <u>SB 614</u> | Healthcare | **Advancing** <br> Second read and referred to committee, 02/07/2023 |
| Oklahoma | <u>SB 404</u> | Civil Rights | **Advancing** <br> Passed Senate; House first read, 03/08/2023 |

These bills are not just threats, but genocidal reality aimed at an already incredibly vulnerable population in need of more protections. Plaintiff does not seek "more"; she just seeks ***equal***. Sadly, equality appears to be a concept that neither Defendants nor Judge Wyrick believe Plaintiff should have.

5. States like Arkansas, Missouri, and Florida already stand poised to pass bills incriminating the use of ***all*** transgender persons to use the restroom that corresponds with their real gender and not just something forced upon them against their will at birth based upon genitalia – something many have already

000016

done without issue for most or all their lives. Once Oklahoma passes the "Women's Rights" Acts within a month or so, known as Oklahoma House Bill 1449 and Senate Bill 408 as previously mentioned above, Plaintiff's bathroom use will also become banned and she will find herself forced to use the men's restroom where men will again sexually assault her. Oklahoma will also pass subsequent bathroom bills to further codify bathroom bans of transgender persons within a year or less to further criminalize their acts through statutory codification.

6.  The State of Oklahoma is currently doing some terribly illegal and crazy legal actions, which have drawn the stern rebuke and criticism from other states and countries. Nonetheless, these politicians and the people that elect them stand fast in the folly of their empathy-lacking ignorance, while the lawsuits continue to build up against them for each crazy anti-transgender law they pass. Meanwhile, Defendants and those like them make our state and the people in it look like a bunch of Cleetuses and Hee-Haws and laugh at them because they act as useful idiots.

Plaintiff is not the only person bring such a suit against Defendants. Plaintiffs from all over Oklahoma are suing Defendants over a variety of anti-LGBTQIA+ actions, for their constant misuse and misapplication of our laws, and an abuse of their governance. Defendants are merely the same bullies they were back in grade school, standing on the back of a smaller kid they pushed to the ground and laughing like Cartman from the South Park show. ☹

Why on earth do Defendants care so much about engaging in governmental overreach and trying to control the lives of innocent people? What superiority complex or insecurity are the overcompensating for? Do Defendants have nothing better to do with their lives? Have Defendants solved the global warming crisis? Have they fixed our broken educational system? Have they found a way to lower teen pregnancies and the mass incarceration crises Oklahoma has? Defendants' malignant fixation on sexuality and gender must be nothing more than a deranged sexual fetish with malice aforethought that people in much more advanced and educated societies in other states and countries grew out of long ago.

7.  One of Plaintiff's primary occupations is as a criminal murder, child molestation, human trafficking, and rape investigator. As such, Plaintiff has access to some of

the same tools as many law enforcement personnel. Plaintiff conducted investigations into both Defendants and Judge Wyrick, and she found they have no substantial relationships of any kind with ___any___ person who is transgender, non-binary, or gender non-conforming. Thus, she understands why they have no intercultural experience or empathy. Issues pertaining to being transgender do not affect them, and as such they do not care. Sadly, this further plays into the Dunning-Kruger Effect, because the less they know – and they know very little about transgender rights – the more they ___think___ they know.

8. None of these horrible anti-transgender bills about "protecting kids" or "helping society" – including Defendants' defense of this lawsuit – is aimed at helping anyone. Instead, Plaintiff would like to reiterate that Defendants' intentions, as summarized by a CPAC speaker just this year, is for ___ANNIHILATION AND GENOCIDE___. Their aim is to make persons who are transgender ___DISAPPEAR___ and to ___TOTALLY ELIMINATE THEM FROM SOCIETY IN ALL ASPECTS___. Judge Wyrick, sadly, egregiously erred by completely ignoring the plethora of evidence presented by Dr. Saramosing/Plaintiff because he himself buys into this Nazi-like mentality.

9. Plaintiff also wishes to submit video footage of yet another conservative speaker who admits that when she as a cisgender/heterosexual person states that she does not want people who are transgender to have, "More," it was really that she demonically just did not want them to have ___equal rights___. She had tried to, but Judge Wyrick repeatedly denied her request to submit this electronically.

10. Judge Wyrick summarily failed to interpret Plaintiff's pleadings in the broadest sense possible, given that she submitted these pro se. Had Judge Wyrick done so, then he should not have ruled adversely against Plaintiff – especially not prior to oral arguments and before considering all the massive amounts of empirical evidence that Plaintiff submitted.

**4. Do you think the district court applied the wrong law? If so, what law do you want applied?**

Yes, Judge Wyrick erred in his ruling by claiming that Plaintiff did not suffer from any past, present, or future harm by Defendants' actions, even when Plaintiff submitted numerous instances to show where Defendants' actions had harmed her in the past, were harming her in the present, and will continue to harm her in the future. Some of the case law relevant to Plaintiff's case is listed below as follows:

**COUNTY OF RIVERSIDE and Cois Byrd, Sheriff of Riverside County, Petitioners, v. Donald Lee McLAUGHLIN, et al.**

**NORTHEASTERN FLORIDA CHAPTER OF the ASSOCIATED GENERAL CONTRACTORS OF AMERICA, Petitioner, v. CITY OF JACKSONVILLE, FLORIDA, et al.**

**Manuel LUJAN, Jr., Secretary of the Interior, Petitioner v. DEFENDERS OF WILDLIFE, et al.**

**Northeastern Fla. Chapter of the Associated Gen. Contractors of America v. Jacksonville, 508 U.S. 656 (1993)-** The Court found the association had standing because certain prior cases under the Equal Protection Clause established a relevant proposition. "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

**Czyzewski v. Jevic Holding Corp., 580 U.S.     , No. 15-649, slip op. at 11 (2017) (**holding that the "mere possibility" that a plaintiff's injury will not be remedied by a favorable decision is insufficient to conclude the plaintiff lacks standing because of want of redressability); *see also* Clinton v. City of New York, 524 U.S. 417, 430–31 (1998) (holding that the imposition of a "substantial contingent liability" qualifies as an injury for purposes of Article III standing).

**Davis v. FEC, 554 U.S. 724, 734 (2008)** ( "[T]he injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." )

**FEC v. Akins 524 U.S. 11 (1998)** This held that the injury was widely shared did not make the claimed injury a "generalized grievance," the Court held, but rather in this case, as in others, the denial of the statutory right was found to be a concrete harm to each member of the class.

**Spokeo, Inc., v. Robins - 578 U.S. ____, No. 13-1339, slip op. at 8–10 (2016).**

Nonetheless, the Spokeo Court cautioned that "intangible" injuries, such as violations of constitutional rights like freedom of speech or the free exercise of religion, can amount to "concrete" injuries. *Id.* at 8–9 ( "'Concrete' is not, however, necessarily synonymous with 'tangible.'" ). In determining whether an intangible harm amounts to a concrete injury, the Court noted that history and the judgment of Congress can inform a court's conclusion about whether a particular plaintiff has standing. *Id.* at 9.

**Davis v. FEC, 554 U.S. 724, 734 (2008)** ( "[T]he injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." ).

**13-193- Susan b. Anthony List v. Driehaus** - Relying on Amnesty International, the Court in Susan B. Anthony List held that an allegation of future injury may suffice if the injury is "'certainly impending' or there is a 'substantial risk' that the harm may occur."

The case law and other cases originally used to support my overall case are listed below:

**United States Supreme Court Cases:**

Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995)
Bolling v. Sharpe, 347 U.S. 497 (1954)
Bostock v. Clayton Cty., 140 S. Ct. 1731 (2020)
Brown v. Bd. of Educ., 347 U.S. 483 (1954)
Craig v. Boren, 429 U.S. 190
Evancho v. Pine-Richland Sch. Dist. Civil No. 2:16-01537
Frontiero v. Richardson, 411 U.S. 677 (1973)
Highmark Inc. v. Allocate Health Mgmt. Syst., Inc., 572 U.S. 559 (2014)
Lawrence v. Texas, 539 U.S. 558 (2003)
Levy v. Louisiana, 391 U.S. 68 (1968)
Michael H. v. Gerald D., 491 U.S. 110 (1989)
Miller v. Johnson, 515 U.S. 900 (1995)
Obergefell v. Hodges, 576 U.S. 644 (2015)
Planned Parenthood v. Casey, 505 U.S. 833 (1992)
San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973)
United States v. Virginia, 518 U.S. 515 (1996)
Weinberger v. Weisenfeld, 420 U.S. 636 (1975)
Skinner v. Oklahoma, 316 U.S. 535 (1942)

United States Court of Appeals Cases:
Doe v. Boyertown Area School District, 897 F.3d 518 (3d Cir. 2018)
Donatelli v. Mitchell, 2 F.3d 508 (3d Cir. 1983)
Grimm v. Gloucester Cty. Sch. Bd, -- F.3d -- 2020 WL 5034430
Ray v. Himes, 2:18-cv-00272-MHW-CMV (2020)

Zzyym v. Blinkin (formerly Zzyym v. Pompeo, Zzyym v. Tillerson &amp; Zzyym v. Kerry,
1:15-cv-02362-RBJ, (2018).

**United States District Court Cases:**

A.H. ex rel. Handling v. Minersville Area School District, 408 F.Supp.3d 536 (M.D. Pa. 2019) (holding that excluding a transgender girl from girls&#39; school restrooms states a sex discrimination claim under Title IX and the Equal Protection Clause of the Constitution).

[THE ISSUANCE OF A BIRTH CERTIFICATE CONSTITUTES A HEALTH SERVICE (Oklahoma State Department of HEALTH). HENCE, DEFENDANTS 1-3 ARE IN VIOLATION OF PLAINTIFF'S RIGHTS].
Brown v. Dept. of Health and Hum. Servs., No. 8:16DCV569, 2017 WL 2414567 (D. Neb. June 2, 2017) (holding that discrimination against transgender people constitutes sex discrimination that is subject to heightened scrutiny under the Equal Protection Clause of the Constitution).

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.']
Cruz v. Zucker, 195 F.Supp.3d 554 (S.D.N.Y. Jul. 5, 2016) (holding that discrimination on the basis of gender identity is sex discrimination under Section 1557 of the Affordable Care Act).

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BY OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.']
[THE ISSUANCE OF A BIRTH CERTIFICATE CONSTITUTES A HEALTH SERVICE (Oklahoma State Department of HEALTH). HENCE, DEFENDANTS 1-3 ARE IN VIOLATION OF PLAINTIFF'S RIGHTS].
Doe v. Massachusetts Department of Correction, et al., No. CV 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018) (holding that where a State creates a classification based on transgender status, the classification is tantamount to discrimination based on sex under the Equal Protection Clause).

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO

IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY
PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS;
DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU
OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING
"SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.'] Finkle v. Howard Cty.,
12 F. Supp. 3d 780 (D. Md. 2014) (holding a claim of discrimination-based gender
identity constitutes sex discrimination under Title VII).

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO
IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY
PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS;
DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU
OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING
"SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]

F.V. v. Barron, 286 F. Supp. 3d 1131 (D. Idaho March 5, 2018) (finding the practice of
denying transgender individuals&#39; applications to change the sexes listed on their
birth certificates violated Equal Protection Clause).

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO
IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY
PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS;
DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BY
OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING
"SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]

Lorelied v. Lance Frye, M.D. et. al (2020)

Relf v. Weinberger, 372 F. Supp. 1196 (D.D.C. 1974)

Stone v. Trump, 280 F. Supp. 3d 747 (D. Md. Nov. 21, 2017) (discrimination against
transgender people is gender-based discrimination under the Equal Protection Clause of
the Constitution).

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO

IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BY OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.']

U.S. v. S.E. Okla. State Univ., No. CIV–15–324–C, 2015 WL 4606079 (W.D. Okla. July 10, 2015) (holding that harassment, health insurance exclusion, and termination based on gender transition constituted sex stereotyping discrimination under Title VII).

**THE ACTS BELOW CONSTITUTE HARASSMENT, EVEN THOUGH THIS IS NOT AN EMPLOYMENT DISCRIMINATION CASE, BECAUSE UNLAWFULLY OUTING PLAINTIFF AND THOSE LIKE HER AGAINT THEIR WILL LEADS TO DISCRIMINATION IN THE WORKPLACE, SCHOOLS, ETC.:**

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BY OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]

Tronetti v. Healthnet Lakeshore Hosp., No. 03–CV–0375E, 2003 WL 22757935 (W.D.N.Y. Sept. 26, 2003) (holding claim of discrimination based on gender transition constitutes sex discrimination under Title VII).

THE ACTS BELOW CONSTITUTE HARASSMENT, EVEN THOUGH THIS IS NOT AN EMPLOYMENT DISCRIMINATION CASE, BECAUSE UNLAWFULLY OUTING PLAINTIFF AND THOSE LIKE HER AGAINT THEIR WILL LEADS TO DISCRIMINATION IN THE WORKPLACE, SCHOOLS, ETC.:

[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]

United States District Court for the Western District of Oklahoma – now
Chief Judge David L. Russell's Ruling:
Norma Kristie, Inc. v. City of Oklahoma City, 572 F. Supp. 88 (W.D. Okla. 1983)

**Appellate Court of Illinois Case:**

Hobby Lobby Stores, Inc., v. Meggan Sommerville and the Human Rights
Commission, 2021 IL App (2d) 190362, No. 2-19-0362, Charge Nos. 2011-CN-
2993 and ) 2011-CN-2994

Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. Feb. 29, 2000) (holding that the Gender
MotivatedViolence Act (GMVA) applied to targeting of a transgender person).
[DEFENDANTS' ACTIONS CONSTITUTE VIOLENCE]
West Virginia Southern District Court:

Hersom et al v. Crouch et al, 2:21-cv-00450 (2021)

**Constitutional & Other Legal Provisions:**

U.S. Const. Amendments I, V, VIII, IX, XIV, Right to Informational Privacy, Due
Process
Americans With Disabilities Act (ADA)
Civil Rights Act of 1964
Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act
1976 Civil Rights Attorney&#39;s Fees Awards Act, 42 U.S.C.A. §1988
Title 18, U.S.C., Section 245 – Federally-Protected Activities
Title 18, U.S.C. 242 – Deprivation of Rights Under Color of Law
Title 18 U.S.C., Section 241 – Conspiracy Against Rights
California Gender Recognition Act
New York Gender Recognition Act
Secondary Sources:
Aime M. Grant, et al., Injustice at Every Turn: A Report of the National
Transgender Discrimination Survey, Nat'l Ctr. For Transgender Equality &amp;
National Gay &amp; Lesbian Task Force 1 (2011),
http://www.transequality.org/sites/default/files/docs/resources/NTDS_Rep ort.pdf
Christina Richards et al., Non-binary or Genderqueer Genders, 28 Int'l Rev.
Psychiatry 95 (2016)
Jessica A. Clarke, They, Them, and Theirs, 132 Harv. L. Rev. 894 (Jan. 2019)

000025

**CONSTITITUIONAL AND STATUTORY PROVISIONS:**

**U.S. Const. Amend. I: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.**

**U.S. Const. Amend. V: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.**

**U.S. Const. Amend. VIII: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.**

**U.S. Const. Amend. IX: The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.**

**U.S. Const. Amend. XIV: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."**

**5.    Did the district court incorrectly decide the facts?  If so, what facts?**

Yes, Judge Wyrick claimed that Plaintiff did not provide any reasons that gave her any standing to bring suit in this case, essentially claiming that she never stated Defendants' actions harmed her in the past, present, or how they would harm her in the future. As noted above and in her extensive briefs, exhibits, responses, etc., this was clearly not the case.

**6.    Did the district court fail to consider important grounds for relief?  If so, what grounds?**

Yes, Judge Patrick Wyrick failed to account for the many reasons Plaintiff stated ad nauseum that granted her standing in case 5:21-CV-01152 to bring her lawsuit in the first place. Plaintiff did indeed suffer significant harm, continues to suffer egregious harm, and will continue to suffer under Defendants' actions, even though Judge Wyrick was just in much in denial about it as were and are Defendants.

**7.   Do you feel that there are any other reasons why the district court's judgment was wrong?  If so, what?**

Plaintiff contends that Judge Wyrick simply did not want to take the time to read through and examine all aspects of Plaintiff's legal case, so he instead took the easy way out to sidestep the efforts he otherwise would have had to make to thoroughly review. Plaintiff made a ton of arguments and added a substantial number of exhibits that clearly showed why she has suffered, is currently suffering, and will continue to suffer from Defendants' empathy-lacking and heartless actions, many of which were from recognized mental health professionals, in support of her case. Simply put, Plaintiff feels that Judge Wyrick was just being lazy and lacked the empathy and cultural competence necessary to properly follow the law and rule in Plaintiff's favor. Plaintiff feels that Judge Wyrick put his very conservative political beliefs which outline he does not feel people who are transgender should have any legal rights over our great country's rule of law in making his decision.

**8.   What action do you want this court to take in your case?**

1.  Upon the review of this appeal, Plaintiff prays that this Court will **REVERSE** Judge Patrick Wyrick's lower court decision and will **GRANT** her **Motion for Summary Judgment.**

2.  If this Court is unable to rule on Plaintiff's **Motion for Summary Judgment,** then Plaintiff prays this court will **REVERSE AND REMAND** Plaintiff's original Petition, Exhibits, and other filed documents back to the lower court and **GRANT Plaintiff's Motion for Temporary Injunction** with a written timeframe by which Judge Wyrick must rule on Plaintiff's **Original Petition**, other **Motions**, etc. - so as not to further deny justice with inordinate delays.

3. Plaintiff seeks all court costs, filing fees, mailing feres, copy fees, service fees, etc., as fully allowed by law for both her appeal and for her initial filing and case in the Western District Court of Oklahoma **(5:21-CV-01152).**

**9. Do you think the court should hear oral arguments in this case? If so, why?**

Plaintiff would absolutely appreciate the opportunity to present her side of this case and to respond in an oral manner to any such concomitant counter assertions Defendants make.

____June 12, 2023____
Date

Dr. mahuy e Sawwesy
Signature

## CERTIFICATE OF SERVICE

I hereby certify that on _____June 12, 2023_____ I sent a copy of the Appellant/Petitioner's Opening Brief to Defendants via opposing counsel:

Kevin McClure" <kevin.mcclure@oag.ok.gov>,

Becky Sunderland <becky.sunderland@oag.ok.gov>,

Susan Yingling <Susan.Yingling@oag.ok.gov>,

Lori Cornell <lori.cornell@oag.ok.gov

_____, at _____
(Opposing Party or Attorney)
_____, the last known address/email

address, by _____E-mail & Upload to Pacer_____.
        (state method of service)

_____         _____
Date                                 Signature

---

## CERTIFICATE OF COMPLIANCE

I certify that the total number of pages I am submitting as my Appellant/Petitioner's Opening Brief is 30 pages or less or alternatively, if the total number of pages exceeds 30, I certify that I have counted the number of words and the total is _____, which is less than 13,000. I understand that if my Appellant/Petitioner's Opening Brief exceeds 13,000 words, my brief may be stricken and the appeal dismissed.

___June 12, 2023___                  _____
Date                                 Signature

A-12  Appellant/Petitioner's Opening Brief - 12/16                    Page 29